1
2
3
4
5
6        **IN THE UNITED STATES DISTRICT COURT**
7            **FOR THE DISTRICT OF ARIZONA**
8  **DAVID ALAN DUNLAP,**                  )
                                           )
9            **Petitioner,**              )    **CIV 10-08226 PCT FJM (MEA)**
                                           )
10           **v.**                        )    **REPORT AND RECOMMENDATION**
                                           )
11 **CHARLES L. RYAN, TERRY GODDARD,**      )
                                           )
12           **Respondents.**             )
                                           )
13 _____ )
14 **TO THE HONORABLE FRANK J. MARTONE:**

15      On or about November 19, 2010, Petitioner filed a *pro*
16 *se* petition seeking a writ of habeas corpus pursuant to 28
17 U.S.C. § 2254. Respondents filed an Answer to Petition for Writ
18 of Habeas Corpus ("Answer") (Doc. 9) on March 3, 2011.
19 Petitioner filed a traverse and a memorandum of points and
20 authorities on April 8, 2011. See Doc. 12 & Doc. 13.

21      **I Procedural History**

22      On February 15, 2001, a Mohave County grand jury
23 returned an indictment charging Petitioner with one count of
24 first-degree premeditated murder.  Answer, Exh. A.  The
25 indictment alleged that Petitioner caused the death of Maja
26 Kensey on or about January 29, 2001.  Petitioner's first jury
27
28

1  trial ended in a hung jury on May 21, 2002. <u>Id.</u>, Exh. A.[1]

2  Petitioner's second trial began November 4, 2002.
3  Petitioner did not testify at his trial and presented a
4  misidentification defense, endeavoring to shift suspicion to
5  other persons, including the victim's roommate. On November 14,
6  2002, after deliberating for approximately four hours, the trial
7  concluded with the second jury finding Petitioner guilty as
8  charged. <u>Id.</u>, Exh. A.

9  Petitioner was sentenced on December 13, 2002. <u>Id.</u>,
10 Exh. L. The trial court sentenced Petitioner pursuant to
11 Arizona Revised Statutes § 13-703. <u>Id.</u>, Exh. L. Although the
12 court found Petitioner's lack of prior felony convictions in
13 mitigation, it found in aggravation the fact that Petitioner
14 committed the crime in a heinous, depraved, and cruel manner.
15 Petitioner was sentenced to prison for a term of "natural life,"
16 i.e., a sentence of life imprisonment without the possibility of
17 parole.

18

19 _____

20  [1] The victim's roommate testified that the victim left her
    apartment on the evening of January 28, 2001, to go gambling with
21  Petitioner in Laughlin, Nevada. Her roommate observed her leaving the
    apartment with Petitioner. The victim did not report for work, nor
    did her roommate see her, on January 29, 2001. The roommate reported
22  the victim missing on January 30, 2001. Petitioner's father testified
    that Petitioner was in possession of a van owned by Petitioner's
23  parents on the night in question. Petitioner first told the police
    he last saw the victim when he drove her home on the morning of
24  January 29, 2001, and he then told the police he had dropped the
    victim off at a different house where she intended to buy drugs. The
25  victim's body was discovered near the shore of Lake Havasu on January
    31, 2001. An autopsy revealed the victim was stabbed twenty-nine
26  times and a forensic scientist testified that her blood was found on
    the van owned by Petitioner's parents and driven by Petitioner on the
27  night of January 28, 2001.

28                                 -2-

1    Petitioner initiated a timely direct appeal of his
2  conviction and sentence on October 27, 2003, raising nine
3  arguments on appeal. On June 24, 2004, prior to the date
4  Petitioner's direct appeal was decided, the United States
5  Supreme Court issued its decision in <u>Blakely v. Washington</u>. On
6  July 26, 2004, Petitioner filed: (1) a motion to supplement his
7  opening brief to raise a <u>Blakely</u> claim and (2) a supplemental
8  opening brief challenging his natural life sentence on the
9  ground that the trial court, not a jury, had found the
10 aggravating circumstance of the heinous, depraved, or cruel
11 manner of the murder. <u>Id.</u>, Exh. P.

12    On July 29, 2004, the Arizona Court of Appeals granted
13 Petitioner's motion to consider the impact of <u>Blakely</u> on his
14 sentence and ordered the parties to brief the issue. In a
15 lengthy memorandum decision issued February 22, 2005, the
16 Arizona Court of Appeals affirmed Petitioner's conviction and
17 sentence. <u>Id.</u>, Exh. A. On March 28, 2005, Petitioner
18 petitioned the Arizona Supreme Court for review. <u>Id.</u>, Exh. T.
19 On October 24, 2005, the Arizona Supreme Court summarily denied
20 review of the Court of Appeals' decision affirming Petitioner's
21 conviction and sentence. <u>Id.</u>, Exh. U.

22    Petitioner initiated a timely state action for post-
23 conviction relief pursuant to Rule 32, Arizona Rules of Criminal
24 Procedure, asserting that his trial counsel's performance was
25 unconstitutionally ineffective. Petitioner was appointed
26 counsel to represent him in his Rule 32 action, who notified the
27 court that they could find no meritorious issue to raise on

28                              -3-

Petitioner's behalf.  On February 22, 2007, Petitioner filed a pro per petition for post-conviction relief alleging numerous instances of ineffective assistance of counsel.

The state trial court considering Petitioner's Rule 32 action ordered an evidentiary hearing for the purpose of determining whether Petitioner's trial counsel "refused to allow" Petitioner to testify at his second trial.  At the hearing Petitioner's trial counsel averred that Petitioner made the decision not to testify, based on counsel's advice.  Counsel denied ever telling Petitioner, as he alleged, "We've discussed this already. You are not taking the stand. You have too much of a past."  At the conclusion of this hearing, the trial court ruled that Petitioner had not carried his burden of establishing his trial counsel improperly prohibited Petitioner from testifying at his trial, and denied post-conviction relief on this ineffectiveness claim and the other ineffective assistance of counsel claims presented in his pro per Rule 32 petition. Id., Exh. X.

Petitioner sought review of the trial court's decision denying Rule 32 relief.  On September 18, 2009, the Arizona Court of Appeals summarily denied review.  Id., Exh. Z. Petitioner sought review by the Arizona Supreme Court, which summarily denied review on December 29, 2009.  Id., Exh. AA & Exh. BB.

In his federal habeas petition Petitioner asserts:

1.  The trial court's jury instruction defining the element of premeditation was unconstitutionally vague because it

-4-

failed to provide a meaningful distinction between first-degree murder and second-degree murder.

2. The State failed to present sufficient evidence to prove the element of premeditation on the charge of first-degree murder.

3. The trial court violated Petitioner's Fifth, Sixth, and Fourteenth Amendment rights to present a defense and to due process of law by precluding his proffered third-party culpability evidence.

4. The prosecutor impermissibly vouched for the State's case, in violation of the Fifth and Fourteenth Amendment rights to due process and a fair trial.

5. The prosecutor shifted the burden of proof to the defense, in violation of the Fifth, Sixth, and Fourteenth Amendments, when he argued that Petitioner had not presented any evidence to support his theory that someone else murdered the victim.

6. The trial court's instruction on reasonable doubt impermissibly lowered the State's burden of proof, in violation of the Fifth, Sixth, and Fourteenth Amendments.

7. The trial court violated the Sixth Amendment's guarantee of a trial by jury by sentencing Petitioner to prison for natural life, based upon the trial court's finding that he committed the charged murder in a heinous, depraved, or cruel manner.

8. Petitioner was denied the effective assistance of counsel at his trial and sentencing, in violation of the Sixth

1  Amendment right to counsel and the Due Process Clauses of the
2  Fifth and Fourteenth Amendments.

3      Respondents allow that the petition was timely filed
4  and that Petitioner has exhausted his first six claims for
5  relief. Respondents assert that the state courts' decisions
6  denying relief on the first six claims were not clearly contrary
7  to nor an unreasonable application of federal law.

8      **II Analysis**

9      **A. Exhaustion and procedural default**

10     The District Court may only grant federal habeas relief
11  on the merits of a claim which has been exhausted in the state
12  courts. See O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S.
13  Ct. 1728, 1731 (1999); Coleman v. Thompson, 501 U.S. 722, 729-
14  30, 111 S. Ct. 2546, 2554-55 (1991). To properly exhaust a
15  federal habeas claim, the petitioner must afford the state the
16  opportunity to rule upon the merits of the claim by "fairly
17  presenting" the claim to the state's "highest" court in a
18  procedurally correct manner. See, e.g., Castille v. Peoples,
19  489 U.S. 346, 351, 109 S. Ct. 1056, 1060 (1989); Rose
20  v.Palmateer, 395 F.3d 1108, 1110 (9th Cir. 2005).[2]

21     The Ninth Circuit Court of Appeals has concluded that,
22  in non-capital cases arising in Arizona, the "highest court"

23  _____

24     [2] Prior to 1996, the federal courts were required to dismiss
    a habeas petition which included unexhausted claims for federal habeas
25  relief. However, section 2254 now states: "An application for a writ
    of habeas corpus may be denied on the merits, notwithstanding the
26  failure of the applicant to exhaust the remedies available in the
    courts of the State." 28 U.S.C. § 2254(b)(2) (1994 & Supp. 2010).
27

28                              -6-

test of the exhaustion requirement is satisfied if the habeas petitioner presented his claim to the Arizona Court of Appeals, either on direct appeal or in a petition for post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999). See also Crowell v. Knowles, 483 F. Supp. 2d 925, 932 (D. Ariz. 2007).

To satisfy the "fair presentment" prong of the exhaustion requirement, the petitioner must present "both the operative facts and the legal principles that control each claim to the state judiciary." Wilson v. Briley, 243 F.3d 325, 327 (7th Cir. 2001). See also Kelly v. Small, 315 F.3d 1063, 1066 (9th Cir. 2003). In Baldwin v. Reese, the Supreme Court reiterated that the purpose of exhaustion is to give the states the opportunity to pass upon and correct alleged constitutional errors. See 541 U.S. 27, 29, 124 S. Ct. 1347, 1349 (2004). Therefore, if the petitioner did not present the federal habeas claim to the state court as asserting the violation of a specific federal constitutional right, as opposed to violation of a state law or a state procedural rule, the federal habeas claim was not "fairly presented" to the state court. See, e.g., id., 541 U.S. at 33, 124 S. Ct. at 1351.[3]

---

[3] A petitioner must present to the state courts the "substantial equivalent" of the claim presented in federal court. Picard v. Connor, 404 U.S. 270, 278, 92 S. Ct. 509, 513-14 (1971); Libberton v. Ryan, 583 F.3d 1147, 1164 (9th Cir. 2009). Full and fair presentation requires a petitioner to present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief. See Scott v. Schriro, 567 F.3d 573, 582 (9th Cir. 2009); Lopez v. Schriro, 491 F.3d 1029, 1040 (9th Cir. 2007). Although a habeas petitioner need not recite "book and verse on the

A federal habeas petitioner has not exhausted a federal habeas claim if he still has the right to raise the claim "by any available procedure" in the state courts. 28 U.S.C. § 2254(c) (1994 & Supp. 2010). Because the exhaustion requirement refers only to remedies still available to the petitioner at the time they file their action for federal habeas relief, it is satisfied if the petitioner is procedurally barred from pursuing their claim in the state courts. <u>See</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 92-93, 126 S. Ct. 2378, 2387 (2006). If it is clear the habeas petitioner's claim is procedurally barred pursuant to state law, the claim is exhausted by virtue of the petitioner's "procedural default" of the claim. <u>See</u>, <u>e.g.</u>, <u>id.</u>, 548 U.S. at 92, 126 S. Ct. at 2387.

Procedural default occurs when a petitioner has never presented a federal habeas claim in state court and is now barred from doing so by the state's procedural rules, including rules regarding waiver and the preclusion of claims. <u>See</u> <u>Castille</u>, 489 U.S. at 351-52, 109 S. Ct. at 1060. Procedural default also occurs when a petitioner did present a claim to the state courts, but the state courts did not address the merits of the claim because the petitioner failed to follow a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 802, 111 S. Ct. 2590, 2594-95 (1991); <u>Coleman</u>, 501 U.S. at 727-28, 111 S. Ct. at 2553-57; <u>Szabo v. Walls</u>, 313 F.3d 392, 395

federal constitution" to fairly present a claim to the state courts, <u>Picard</u>, 404 U.S. at 277-78, 92 S. Ct. at 512-13, they must do more than present the facts necessary to support the federal claim. <u>See</u> <u>Anderson v. Harless</u>, 459 U.S. 4, 6, 103 S. Ct. 276, 277 (1982).

-8-

(7th Cir. 2002). "If a prisoner has defaulted a state claim by 'violating a state procedural rule which would constitute adequate and independent grounds to bar direct review ... he may not raise the claim in federal habeas, absent a showing of cause and prejudice or actual innocence.'" Ellis v. Armenakis, 222 F.3d 627, 632 (9th Cir. 2000), quoting Wells v. Maass, 28 F.3d 1005, 1008 (9th Cir. 1994).

Because the Arizona Rules of Criminal Procedure regarding timeliness, waiver, and the preclusion of claims bar Petitioner from now returning to the state courts to exhaust any unexhausted federal habeas claims, Petitioner has exhausted, but procedurally defaulted, any claim not previously fairly presented to the Arizona Court of Appeals in his direct appeal. See Insyxiengmay v. Morgan, 403 F.3d 657, 665 (9th Cir. 2005); Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002). See also Stewart v. Smith, 536 U.S. 856, 860, 122 S. Ct. 2578, 2581 (2002) (holding Arizona's state rules regarding the waiver and procedural default of claims raised in attacks on criminal convictions are adequate and independent state grounds for affirming a conviction and denying federal habeas relief on the grounds of a procedural bar); Ortiz v. Stewart, 149 F.3d 923, 931-32 (9th Cir. 1998).

### C. Cause and prejudice

The Court may consider the merits of a procedurally defaulted claim if the petitioner establishes cause for their procedural default and prejudice arising from that default. "Cause" is a legitimate excuse for the petitioner's procedural

default of the claim and "prejudice" is actual harm resulting from the alleged constitutional violation. <u>See</u> <u>Thomas v. Lewis</u>, 945 F.2d 1119, 1123 (9th Cir. 1991). Under the "cause" prong of this test, Petitioner bears the burden of establishing that some objective factor external to the <u>defense</u> impeded his compliance with Arizona's procedural rules. <u>See</u> <u>Moorman v. Schriro</u>, 426 F.3d 1044, 1058 (9th Cir. 2005); <u>Vickers v. Stewart</u>, 144 F.3d 613, 617 (9th Cir. 1998); <u>Martinez-Villareal v. Lewis</u>, 80 F.3d 1301, 1305 (9th Cir. 1996). To establish prejudice, the petitioner must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>United States v. Frady</u>, 456 U.S. 152, 170, 102 S. Ct. 1584, 1595 (1982). <u>See</u> <u>also</u> <u>Correll v. Stewart</u>, 137 F.3d 1404, 1415-16 (9th Cir. 1998).

Generally, a petitioner's lack of legal expertise is not cause to excuse procedural default. <u>See</u> <u>Hughes v. Idaho State Bd. of Corr.</u>, 800 F.2d 905, 908 (9th Cir. 1986). Additionally, allegedly ineffective assistance of appellate counsel does not establish cause for the failure to properly exhaust a habeas claim in the state courts unless the specific Sixth Amendment claim providing the basis for cause was itself properly exhausted. <u>See</u> <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591 (2000); <u>Coleman</u>, 501 U.S. at 755, 111 S. Ct. at 2567; <u>Deitz v. Money</u>, 391 F.3d 804, 809 (6th Cir. 2004).

To establish prejudice, the petitioner must show that the alleged constitutional error worked to his actual and substantial disadvantage, infecting his entire trial with constitutional violations. See Vickers, 144 F.3d at 617; Correll, 137 F.3d at 1415-16. Establishing prejudice requires a petitioner to prove that, "but for" the alleged constitutional violations, there is a reasonable probability he would not have been convicted of the same crimes. See Manning v. Foster, 224 F.3d 1129, 1135-36 (9th Cir. 2000); Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999). Although both cause and prejudice must be shown to excuse a procedural default, the Court need not examine the existence of prejudice if the petitioner fails to establish cause. See Engle v. Isaac, 456 U.S. 107, 134 n.43, 102 S. Ct. 1558, 1575 n.43 (1982); Thomas, 945 F.2d at 1123 n.10.

### D. Fundamental miscarriage of justice

Review of the merits of a procedurally defaulted habeas claim is required if the petitioner demonstrates review of the merits of the claim is necessary to prevent a fundamental miscarriage of justice. See Dretke v. Haley, 541 U.S. 386, 393, 124 S. Ct. 1847, 1852 (2004); Schlup v. Delo, 513 U.S. 298, 316, 115 S. Ct. 851, 861 (1995); Murray v. Carrier, 477 U.S. 478, 485-86, 106 S. Ct. 2639, 2649 (1986). A fundamental miscarriage of justice occurs only when a constitutional violation has probably resulted in the conviction of one who is factually innocent. See Murray, 477 U.S. at 485-86, 106 S. Ct. at 2649; Thomas v. Goldsmith, 979 F.2d 746, 749 (9th Cir. 1992) (showing

-11-

of factual innocence is necessary to trigger manifest injustice relief). To satisfy the "fundamental miscarriage of justice" standard, a petitioner must establish by clear and convincing evidence that no reasonable fact-finder could have found him guilty of the offenses charged. See Dretke, 541 U.S. at 393, 124 S. Ct. at 1852; Wildman v. Johnson, 261 F.3d 832, 842-43 (9th Cir. 2001).

### E. Adequate and independent state-law basis

To constitute an adequate and independent state procedural ground sufficient to support a state court's finding of procedural default, "a state rule must be clear, consistently applied, and well-established at the time of [the] petitioner's purported default." Lambright v. Stewart, 241 F.3d 1201, 1203 (9th Cir. 2001). A state rule is considered consistently applied and well-established if the state courts follow it in the "vast majority of cases." Scott, 567 F.3d at 580, quoting Dugger v. Adams, 489 U.S. 401, 417 n.6, 109 S. Ct. 1211, 1221 n.6 (1989). The Ninth Circuit Court of Appeals has held that "federal courts should not insist upon a petitioner, as a procedural prerequisite to obtaining federal relief, comply[] with a rule the state itself does not consistently enforce." Id., 567 F.3d at 581-82, quoting Siripongs v. Calderon, 35 F.3d 1308, 1318 (9th Cir. 1994). It is Respondents' burden to prove the rule cited and relied upon by the state court in denying relief was clear, consistently applied, and well-established at the time the rule was applied to Petitioner's case. Id.

-12-

Additionally, for the proffered state procedural bar to preclude the consideration of a habeas claim "the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." <u>Caldwell v. Mississippi</u>, 472 U.S. 320, 327, 105 S. Ct. 2633, 2638-39 (1985). <u>See</u> <u>also</u> <u>Harris v. Reed</u>, 489 U.S. 255, 261-62, 109 S. Ct. 1038, 1042 (1989); <u>Pole v. Randolph</u>, 570 F.3d 922, 937 (7th Cir. 2009); <u>Scott</u>, 567 F.3d at 581-82.

### F. Standard of review

The Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court reached a decision contrary to clearly established federal law, or the state court decision was an unreasonable application of clearly established federal law. <u>See</u> 28 U.S.C. § 2254(d) (1994 & Supp. 2010); <u>Carey v. Musladin</u>, 549 U.S. 70, 75, 127 S. Ct. 649, 653 (2006); <u>Musladin v. Lamarque</u>, 555 F.3d 834, 838 (9th Cir. 2009). Factual findings of a state court are presumed to be correct and can be reversed by a federal habeas court only when the federal court is presented with clear and convincing evidence. <u>See</u> 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."); <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240-41, 125 S. Ct. 2317, 2325

(2005); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003); <u>Crittenden v. Ayers</u>, 624 F.3d 943, 950 (9th Cir. 2010); <u>Stenson v. Lambert</u>, 504 F.3d 873, 881 (9th Cir. 2007); <u>Anderson v. Terhune</u>, 467 F.3d 1208, 1212 (9th Cir. 2006). The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." <u>Sumner v. Mata</u>, 455 U.S. 591, 593, 102 S. Ct. 1303, 1304-05 (1982).

A state court decision is contrary to federal law if it applied a rule contradicting the governing law of Supreme Court opinions, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. <u>See</u>, <u>e.g.</u>, <u>Brown v. Payton</u>, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438 (2005); <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 663, 124 S. Ct. 2140, 2149 (2004).

> A state court decision is contrary to clearly established federal law if it arrives at a conclusion of law opposite to that of the Supreme Court or reaches a result different from the Supreme Court on materially indistinguishable facts. <u>Taylor v. Lewis</u>, 460 F.3d 1093, 1097 n.4 (9th Cir. 2006). A state court decision involves an unreasonable application of clearly established federal law if it correctly identifies a governing rule but applies it to a new set of facts in a way that is objectively unreasonable, or if it extends, or fails to extend, a clearly established legal principle to a new set of facts in a way that is objectively unreasonable. <u>Id.</u> An unreasonable application of federal law is different from an incorrect application of federal law. <u>Id.</u>

<u>McNeal v. Adams</u>, 623 F.3d 1283, 1287-88 (9th Cir. 2010), <u>cert. denied</u>, 79 U.S.L.W. 3727 (June 27, 2011) (No. 10-10109).

-14-

For example, a state court's decision is considered contrary to federal law if the state court erroneously applied the wrong standard of review or an incorrect test to a claim. See Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009); Wright v. Van Patten, 552 U.S. 120, 124-25, 128 S. Ct. 743, 746-47 (2008); Norris v. Morgan, 622 F.3d 1276, 1288 (9th Cir. 2010), cert. denied, 131 S. Ct. 1557 (2011). See also Frantz v. Hazey, 533 F.3d 724, 737 (9th Cir. 2008); Bledsoe v. Bruce, 569 F.3d 1223, 1233 (10th Cir. 2009).

The state court's determination of a habeas claim may be set aside under the unreasonable application prong if, under clearly established federal law, the state court was "unreasonable in refusing to extend [a] governing legal principle to a context in which the principle should have controlled." Ramdass v. Angelone, 530 U.S. 156, 166, 120 S. Ct. 2113, 2120 (2000). See also Cheney v. Washington, 614 F.3d 987, 994 (9th Cir. 2010); Cook v. Schriro, 538 F.3d 1000, 1015 (9th Cir. 2008). However, the state court's decision is an unreasonable application of clearly established federal law only if it can be considered objectively unreasonable. See, e.g., Renico v. Lett, 130 S. Ct. 1855, 1862 (2010). An unreasonable application of law is different from an incorrect one. See Renico, 130 S. Ct. at 1862; Cooks v. Newland, 395 F.3d 1077, 1080 (9th Cir. 2005).[4]

---

[4] "That test is an objective one and does not permit a court to grant relief simply because the state court might have incorrectly applied federal law to the facts of a certain case." Adamson v. Cathel, 633 F.3d 248, 255-56 (3d Cir. 2011).

A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S. Ct. 2140, [] (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." <u>Ibid.</u> "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, [] 129 S. Ct. 1411, 1413–14, [] (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 131 S. Ct. 770, 786 (2011).

The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta," of the Supreme Court's decisions "as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S. Ct. 1495 [] (2000). A state court's decision is "contrary to" this body of law if it applies a rule that contradicts the governing law articulated by the Supreme Court or arrives at a result different than that reached by the Supreme Court in a case with materially indistinguishable facts. <u>Id.</u> at 405-06, 120 S. Ct. 1495.

A decision involves an "unreasonable application" of clearly established federal law if it "identifies the correct governing legal principle ... but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413, 120 S. Ct. 1495. The Supreme Court has emphasized that "an unreasonable application of federal law is different from an incorrect application of federal law." <u>Id.</u> at 410, 120 S. Ct. 1495. Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." <u>Id.</u> at 411, 120 S. Ct. 1495. Instead, the court must determine whether the state court's application of Supreme Court

-16-

> precedents was objectively unreasonable. Id. at 409, 120 S. Ct. 1495. Although the Supreme Court's decisions are the focus of the unreasonable-application inquiry, we may look to Ninth Circuit case law as "persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law." Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000).

Howard v. Clark, 608 F.3d 563, 567-68 (9th Cir. 2010).

Additionally, the United States Supreme Court recently held that, with regard to claims adjudicated on the merits in the state courts, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

If the Court determines that the state court's decision was an objectively unreasonable application of clearly established United States Supreme Court precedent, the Court must review whether Petitioner's constitutional rights were violated, i.e., the state's ultimate denial of relief, without the deference to the state court's decision that the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") otherwise requires. See Panetti v. Quarterman, 551 U.S. 930, 953-54, 127 S. Ct. 2842, 2858-59 (2007); Greenway v. Schriro, ___ F.3d ___, 2011 WL 3195310, at *14 (9th Cir.); Norris, 622 F.3d at 1286; Howard, 608 F.3d at 568.

-17-

### G. Petitioner's claims for relief

**1. Petitioner asserts the trial court's jury instruction defining the element of premeditation was unconstitutionally vague because it failed to provide a meaningful distinction between first-degree murder and second-degree murder.**

Petitioner raised this claim in his direct appeal. The Arizona Court of Appeals denied relief on the merits of the claim. The Court of Appeals applied harmless error analysis in addressing Petitioner's argument that the challenged jury instruction allowed the jury to find premeditation based "solely on the passage of time." The Court of Appeals concluded, after a thorough review of the record, that any error in the instruction was harmless because the element of premeditation was not at issue in the case, i.e., Petitioner's defense was that there was insufficient evidence that he committed the crime, not the manner in which the crime was committed. The appellate court also determined the prosecution had presented sufficient evidence that the crime was premeditated, including the infliction of multiple wounds, the fact that the victim was killed in a remote location, and that her body was dragged from where she was killed into bushes to conceal the crime.

The Arizona Court of Appeals' decision was not clearly contrary to nor an unreasonable application of federal law. Due process guarantees "the fundamental elements of fairness in a criminal trial." Estelle v. McGuire, 502 U.S. 62, 70, 112 S. Ct. 475, 481, quoting Spencer v. Texas, 385 U.S. 554, 563-64, 87 S. Ct. 648, 653 (1967). When reviewing a claim that an incorrect jury instruction resulted in a constitutional

-18-

violation, the reviewing court must decide "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Estelle, 502 U.S. at 72-73, 112 S. Ct. at 482.

Jury instructions are subject to the harmless error analysis of Brecht v. Abrahamson, 507 U.S. 619, 113 S. Ct. 1710 (1993). See Byrd v. Lewis 566 F.3d 855, 861-67 (9th Cir. 2009), cert. denied, 130 S. Ct. 2103 (2010). Under this standard, "errors are harmless if they do not have a 'substantial and injurious effect or influence in determining the jury's verdict.'" Inthavong v. Lamarque, 420 F.3d 1055, 1059 (9th Cir. 2005), quoting Brecht, 507 U.S. at 637, 113 S. Ct. at 1721-22. See also Byrd v. Lewis, 566 F.3d 855, 863 (9th Cir. 2009) (explaining the distinction between jury instruction subject to structural error review and jury instruction subject to harmless error review), cert. denied, 130 S. Ct. 2103 (2010), citing Hedgpeth v. Pulido, 555 U.S. 57, 60, 129 S. Ct. 530, 532 (2008).

The Arizona Court of Appeals' decision denying this claim was not clearly contrary to nor an unreasonable application of federal law. The appellate court reviewed the entire record of the trial and properly considered whether the challenged instruction was "harmless" in the jury's determination of guilt. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

-19-

**2. Petitioner contends the state failed to present sufficient evidence to prove the premeditation element of first-degree murder.**

Petitioner raised this claim in his direct appeal. The Arizona Court of Appeals denied relief on the merits of the claim. The appellate court's decision was not clearly contrary to nor an unreasonable application of federal law.

A due process claim based on insufficiency of the evidence can only succeed when, viewing all the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See, e.g., Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2789 (1979). When undertaking habeas review of a state court decision rejecting a claim of insufficiency of the evidence, the Court's inquiry is very limited; the Court may ask only whether the state court's decision was contrary to or reflected an unreasonable application of Jackson to the facts of a particular case. See Juan H. v. Allen, 408 F.3d 1262, 1274–75 (9th Cir. 2005).[5]

> A federal habeas court can only set aside a state-court decision as "an unreasonable

---

[5]

In reviewing the sufficiency of evidence, we may grant habeas relief only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781 [](1979); see also McDaniel v. Brown, [], 130 S. Ct. 665, 673 (2010).... Furthermore, "[a]fter AEDPA, we apply the standards of Jackson with an additional layer of deference" to state court findings. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). Ngo v. Giurbino, ___ F.3d ___, 2011 WL 2675808, at *2 (9th Cir.).

-20-

> application of ... clearly established Federal law," § 2254(d)(1), if the state court's application of that law is "objectively unreasonable," <u>Williams v. Taylor</u>, 529 U.S. 362, 409, 120 S. Ct. 1495, [] (2000). And <u>Jackson</u> requires a reviewing court to review the evidence "in the light most favorable to the prosecution." 443 U.S., at 319, 99 S. Ct. 2781. Expressed more fully, this means a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." <u>Id.</u>, at 326, 99 S. Ct. 2781 ....

<u>McDaniel v. Brown</u>, 130 S. Ct. 665, 673 (2010).

Insufficient evidence claims are reviewed by looking at the elements of the offense under state law and, in determining whether sufficient evidence supports a conviction, federal courts are bound by a state court's interpretation of state law. <u>See</u> <u>Emery v. Clark</u>, 643 F.3d 1210, 1213-14 (9th Cir. 2011). Additionally, circumstantial evidence and inferences drawn from it are sufficient to sustain a conviction. <u>See</u>, <u>e.g.</u>, <u>Ngo v. Giurbino</u>, ___ F.3d ____, 2011 WL 2675808, at *2 (9th Cir.); <u>Walters v. Maass</u>, 45 F.3d 1355, 1358 (9th Cir. 1995).

The Arizona Court of Appeals' conclusion that there was sufficient evidence presented at Petitioner's trial to support the jury's verdict of premeditated murder was not clearly contrary to nor an unreasonable application of <u>Jackson</u>. The victim was last seen in the company of Petitioner, and Petitioner did not dispute that he and the victim were in possession of a van, in which the victim's blood was found. The victim had been stabbed twenty-nine times and her body

-21-

dragged from where she was murdered into bushes some distance away.  The location where the victim's body was found was near a muddy dirt road and mud was found on the tires and interior of the van driven by Petitioner on the night of the murder.  The victim's body was partially clothed when found.  Petitioner gave conflicting stories to the police about where and when he had last scene the victim.  Accordingly, there was sufficient circumstantial and physical evidence to support a jury verdict of first degree premeditated murder and Petitioner is not entitled to federal habeas relief on this claim.

**3. Petitioner asserts the trial court violated his Fifth, Sixth and Fourteenth Amendment rights to present a defense and to due process by precluding his proffered third-party culpability evidence.**

It is arguable whether Petitioner properly exhausted this claim in the state courts as a federal constitutional claim.  When raising the claim of error in his direct appeal Petitioner made only passing reference to the Sixth Amendment and his federal constitutional right to due process of law.  In his brief in his direct appeal the discussion regarding this claim of error focused on the impropriety of the trial court's decision on a motion in limine based on state law and state rules.  The state trial court and the Arizona Court of Appeals found the evidence that Petitioner sought to introduce irrelevant and therefore inadmissible under state evidentiary rules.  Regardless of any failure to properly exhaust this claim in the state courts, the claim may be rejected on the merits.

To the extent that Petitioner asks the Court to review the correctness of the Arizona court's application of Arizona Rules of Evidence 401, 402, and 403, "[i]t is not the province of a federal court to reexamine state court determinations of state law questions." Estelle, 502 U.S. at 67-68; Walters v. McCormick, 122 F.3d 1172, 1175 (9th Cir. 1997).

Additionally, the Arizona Court of Appeals' rejection of Petitioner's claim that the trial court improperly excluded evidence that the victim's roommate had a past history of domestic violence, was neither contrary to nor an unreasonable application of clearly established federal law. See Clark v. Arizona, 548 U.S. 735, 770, 126 S. Ct. 2709, 2731-32 (2006) ("While the Constitution ... prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury."); Montana v. Egelhoff, 518 U.S. 37, 42, 116 S. Ct. 2013, 2017 (1996) ("The accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.").

The exclusion of evidence of third-party culpability, absent substantial evidence tending to directly connect the third person with the actual commission of the subject offense, or the exclusion of tangential evidence of something that may

have happened at a different time and place, does not constitute a due process violation. See Spivey v. Rocha, 194 F.3d 971, 978 (9th Cir. 1999) (concluding that state trial court did not infringe the defendant's constitutional rights by excluding speculative third-party culpability evidence); Walters, 122 F.3d at 1177. Compare Holmes v. South Carolina, 547 U.S. 319, 326-27, 126 S. Ct. 1727, 1732 (2006).

Because the Arizona state trial courts' decision precluding the evidence did not violate Petitioner's federal constitutional rights, Petitioner is not entitled to federal habeas relief on the merits of this claim regardless of any failure to exhaust the claim in the state courts.

**4. Petitioner contends the prosecutor impermissibly vouched for the state's case, in violation of his Fifth and Fourteenth Amendment rights to due process and his right to a fair trial.**

In his habeas petition Petitioner alleges the prosecutor erred when he stated during closing argument that the police "knew their job" and that the police would have pursued any evidence that led to other persons. Petitioner also contends the prosecutor violated Petitioner's constitutional rights by stating, during closing argument, that Petitioner was the person who left a bloody hand-print on the rear door of the van Petitioner had borrowed from his parents the night of the crime to provide transportation for the victim.

Petitioner has exhausted these claims in the state courts. In his direct appeal Petitioner asserted that the prosecution improperly vouched for the credibility of the police

and the police investigation into the murder during closing argument. The Arizona Court of Appeals denied relief, noting that Petitioner had not contemporaneously objected to the prosecutor's statements, but instead had claimed error in a motion for a new trial. The Arizona Court of Appeals applied fundamental error review because it concluded that, as a matter of state law, Petitioner had failed to preserve the issue for appeal. Additionally, after considering the prosecutor's challenged statements in the context of the entire case, the appellate court determined that the statements were not improper. The Arizona Court of Appeals noted that the jury had been instructed that closing argument was not evidence.

The Arizona Court of Appeals' conclusion that Petitioner's rights were not violated by the prosecutor's statements was not clearly contrary to federal law. Petitioner's claim regarding prosecutorial misconduct in the context of closing argument may be denied on the merits.

A habeas petitioner is not entitled to relief on a claim that a prosecutor's comments violated their right to due process of law unless they can establish that the prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, 2471 (1986), quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 1871 (1974) ("it is not enough that prosecutors' remarks were undesirable or even universally condemned...."). See also Towery v. Schriro, 641 F.3d 300, 310-11 (9th Cir. 2010) (stating

that harmless error applies to claims of prosecutorial misconduct), petition for cert. filed, May 19, 2011 (No. 10-10686, 10A891); Lundgren v. Mitchell, 440 F.3d 754, 778 (6th Cir. 2006). An improper statement made at closing argument warrants habeas relief only if the reviewing court concludes that the statements had a substantial and injurious effect or influence on the jury's verdict. See Turner v. Calderon, 281 F.3d 851, 868 (9th Cir. 2002).

Under this standard, a defendant's right to due process of law is violated, for instance, if the prosecutor's statements give personal assurances of any witness's veracity or suggest that the prosecutor has information, outside of the evidence introduced at trial, that supported the witness's credibility. See United States v. Weatherspoon, 410 F.3d 1142, 1146 (9th Cir. 2005); United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir. 1993); United States v. Francis, 170 F.3d 546, 550 (6th Cir. 1999); Johnson v. Bell, 525 F.3d 466, 482 (6th Cir. 2008). A prosecutor's comments cannot be considered a violation of the defendant's right to due process when, for instance, the prosecutor properly and in good faith asks the jury to draw reasonable inferences from the evidence. See Shaw v. Terhune, 380 F.3d 473, 480 (9th Cir. 2004).

The Arizona Court of Appeals' conclusion that the statements which Petitioner asserts violated his right to due process were not improper vouching is not clearly contrary to federal law. The Arizona Court of Appeals properly considered whether, in light of the entire proceedings, the challenged

1  statements had a substantial or injurious effect on the jury's
2  verdict and determined the statements did not violate
3  Petitioner's right to due process of law. Accordingly,
4  Petitioner is not entitled to habeas relief on the basis of his
5  assertion that the prosecutor denied him his right to due
6  process of law by improperly vouching for witnesses or the
7  state's case.

8  **5. Petitioner argues the prosecutor improperly shifted the burden of proof to the defense, in violation of the Fifth, Sixth, and Fourteenth Amendments, when he argued that Petitioner had not presented any evidence to support the theory that someone else murdered the victim.**

11  In his direct appeal Petitioner asserted the trial
12  court erred by denying his motion for a new trial, which was
13  predicated, inter alia, on an argument that the prosecutor
14  improperly commented on the defense's failure to present
15  evidence in support of the theory that someone other than
16  Petitioner committed the crime. The Arizona Court of Appeals
17  concluded that the prosecutor had properly commented on the
18  defense's failure to present evidence without infringing on
19  Petitioner's right to remain silent. The Arizona Court of
20  Appeals' decision denying relief on this claim was not an
21  unreasonable application of federal law.

> Prosecutors may comment on the failure of the defense to produce evidence to support an affirmative defense so long as it does not directly comment on the defendant's failure to testify. See Lockett v. Ohio, 438 U.S. 586, 595, 98 S. Ct. 2954, [] (1978) (allowing comments concerning opportunity to call witnesses where defense focused on potential testimony). In this case, the prosecutor's comment was aimed at attacking the credibility of [a witness'] testimony

-27-

> concerning the believability of [the defendant's] alibi defense. At most, the prosecutor's comment is a reference to [the defendant's] statements to [the witness] while in jail together, not a direct comment on [the defendant's] failure to testify. .... The Arizona Supreme Court's interpretation of this comment was not objectively unreasonable; therefore, there was no Griffin error.

Cook v. Schriro, 538 F.3d 1000, 1020 (9th Cir. 2008) (internal citation omitted).

Having reviewed the transcripts provided to the Court and the pleadings of both Petitioner and Respondents, the Magistrate Judge concludes that the Arizona Court of Appeals' decision denying relief on this claim was not contrary to nor an unreasonable application of federal law. The prosecutor's statement did not violate Petitioner's federal constitutional rights by noting for the jury that Petitioner had not presented evidence of third-party culpability without commenting on the fact that Petitioner had remained silent at trial. Accordingly, Petitioner is not entitled to federal habeas relief on the basis of this claim for relief.

**6. Petitioner asserts the trial court's instruction on reasonable doubt impermissibly lowered the state's burden of proof, in violation of the Fifth, Sixth, and Fourteenth Amendments.**

Petitioner raised this claim in his direct appeal and the Arizona Court of Appeals denied the claim on the merits. The Arizona Court of Appeals' decision was not contrary to nor an unreasonable application of federal law.

-28-

The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course. Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, "taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury." Holland v. United States, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954).

\* \* \*

The constitutional question in the present cases, therefore, is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the Winship standard. ...

Victor v. Nebraska, 511 U.S. 1, 5-6, 114 S. Ct. 1239, 1243 (1994). See also Gibson v. Ortiz, 387 F.3d 812, 821 (9th Cir. 2004) ("Although the Constitution does not require jury instructions to contain any specific language, the instructions must convey both that a defendant is presumed innocent until proven guilty and that he may only be convicted upon a showing of proof beyond a reasonable doubt.").

The jury instruction given in this matter, mandated in Arizona by Arizona v. Portillo, 182 Ariz. 592, 898 P.2d 970 (1995),[6] is a nearly a verbatim copy of the pattern jury

---

[6] The Arizona state courts have repeatedly rejected the argument that a reasonable doubt instruction that comports with Portillo violates the defendant's Fifth Amendment right to the requirement of proof beyond a reasonable doubt, the Sixth Amendment right to a jury trial, and the right to due process of law guaranteed by the Fifth and Fourteenth Amendment. See, e.g., Arizona v. Garza, 216 Ariz. 56, 66-67, 163 P.3d 1006, 1016-17 (2007); Arizona v. Ellison, 213 Ariz. 116, 133, 140 P.3d 899, 916 (2006).

-29-

instruction on reasonable doubt adopted by the Federal Judicial Center. Cf. Arizona v. Van Adams, 194 Ariz. 408, 418, 984 P.2d 16, 26 (1999) (noting instruction based on FJC instruction). The Ninth Circuit has upheld language that is identical or substantially similar to the FJC's pattern instruction. See Himes v. Thompson, 336. F.3d 848, 853 (9th Cir. 2003). Accordingly, the Arizona Court of Appeals' decision denying this claim was not clearly contrary to nor an unreasonable application of federal law and Petitioner is not entitled to habeas relief on the basis of this claim.

**7. Petitioner maintains that the trial court violated his right to a jury trial by sentencing Petitioner to prison for natural life based upon the trial court's finding that he committed the charged murder in a heinous, depraved, or cruel manner.**

Petitioner raised this claim in his direct appeal through supplemental pleading allowed after the United States Supreme Court issued its decision in Blakely v. Washington during the pendency of that appeal. The Arizona Court of Appeals denied relief, concluding that a sentence of natural life resulting from a conviction for first-degree murder did not violate Petitioner's right to a jury trial or the decision in Blakely. This conclusion was not clearly contrary to nor an unreasonable application of federal law.

The Blakely opinion arose from a previous decision of the United States Supreme Court in Apprendi v. New Jersey. See 530 U.S. 466, 120 S. Ct. 2348 (2000). The Supreme Court held in Apprendi that, other than the fact of a prior conviction, any fact which increases the penalty for a crime beyond the

legislatively-prescribed "statutory maximum" must be submitted to a jury and proved beyond a reasonable doubt. 530 U.S. at 488-90, 120 S. Ct. at 2361-63. The Supreme Court concluded that, otherwise, a defendant's Sixth Amendment right to have a jury determine their guilt was violated. The federal courts interpreted <u>Apprendi</u> to mean that a sentencing judge may not aggravate a sentence beyond the "statutory maximum" proscribed by the state legislature.

In <u>Blakely</u>, the United States Supreme Court clarified that the term "statutory maximum," as used in <u>Apprendi</u>, was to be interpreted as the presumptive sentence, or the presumptive sentence given the facts as found by the jury or admitted by the defendant, rather than the maximum statutory sentence allowed after judicial fact-finding. <u>See</u> 542 U.S. at 303-04, 124 S. Ct. at 2537; <u>Allen v. Reed</u>, 427 F.3d 767, 772 (10th Cir. 2005) ("In other words, [after <u>Blakely</u>,] the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.").

A defendant convicted of first-degree murder in the State of Arizona may be sentenced to a term of natural life or a term of 25 years to life imprisonment, i.e., a sentence of life imprisonment but with the possibility of parole after serving 25 years. The Arizona courts have determined that a sentencing court may impose a sentence of natural life for first-degree murder based solely on the facts reflected in the jury's guilty verdict, i.e., the elements of that crime. <u>E.g.</u>,

-31-

Arizona v. Fell, 210 Ariz. 554, 558-60, 115 P.3d 594, 598-600 (2005)(en banc). The Arizona courts have reasoned that, because there is no requirement that any aggravating factor be found before natural life may be imposed, a trial court does not unreasonably apply clearly established federal law, i.e., Blakely, in sentencing a defendant convicted of first-degree murder to natural life without a jury determination of aggravating factors beyond a reasonable doubt. See id., 210 Ariz. at 560, 115 P.3d at 600 ("We therefore conclude that the Sixth Amendment does not require that a jury find an aggravating circumstance before a natural life sentence can be imposed"); Arizona v. Williams, 220 Ariz. 331, 333, 206 P.3d 780, 782 (Ct. App. 2008) ("Our supreme court ruled in Fell that neither before nor after the legislature amended the statutes in 2003 was a trial court required to make any specific finding before imposing a natural life sentence."). See also Arizona v. Fell, 209 Ariz. 77, 86, 97 P.3d 902, 910-11 (Ct. App. 2004).[7]

---

[7]

Neither the statute nor case law requires a sentencing judge to enter factual findings on the aggravating or mitigating factors in this context. Compare § 13-703 (containing no language requiring findings of fact on circumstances judge considers in imposing prison term of natural life or life with the possibility of parole) with § 13-702(B) (requiring factual findings on aggravating or mitigating factors); And, we find both unsupported and unpersuasive [the defendant's] suggestion that a life term of imprisonment with the possibility of parole is the "presumptive" prison term in this context or the "statutory maximum" for purposes of Blakely and that a natural life term is tantamount to an aggravated, upward adjustment from that presumptive term.

In _Fell_, the en banc Arizona Supreme Court held that Arizona's non-capital murder sentencing scheme does not offend _Apprendi_ or _Blakely_ because "nothing in § 13-703 require[s] the finding of any fact beyond those reflected in the jury's verdict of guilt as a prerequisite to the imposition of a natural life sentence." 210 Ariz. at 558-59, 115 P.3d at 598-99. The court rejected the argument that a sentence of life with the possibility of parole is the "presumptive" sentence and, accordingly, that a sentence of natural life constitutes an "aggravated" sentence for first-degree murder. _Id._ "Had the legislature intended to require a specific finding be made before a natural life sentence could be imposed, it surely would have said so specifically, as it did in the statutes governing sentencing for felonies other than first-degree murder." _Id._, 210 Ariz. at 559, 115 P.3d at 599.

The Arizona courts have interpreted the law applicable at the time of Petitioner's sentencing as allowing an individual convicted of first-degree murder to be sentenced to natural life "based solely on the jury's guilty verdict, without additional findings." _Fell_, 209 Ariz. at 85, 97 P.3d at 910. This interpretation of state law is binding on this Court. The Supreme Court "has repeatedly held that a state court's interpretation of state law ... binds a federal court sitting in habeas corpus." _Bradshaw v. Richey_, 546 U.S. 74, 126 S. Ct. 602, 604 (2005). Because, as a matter of law, the jury's

---

209 Ariz. 77, 86, 97 P.3d 902, 910-11 (Ct. App. 2004).

-33-

verdict of guilty of first-degree premeditated murder, without further findings, provided a sufficient factual basis for the sentence imposed on Petitioner, he is not entitled to federal habeas relief on the merits of his _Blakely_ claim.

Additionally, in _Arizona v. Martinez_ the Arizona Court of Appeals denied a _Blakely_ claim and affirmed a defendant's sentencing in accordance with _Viramontes_, concluding:

> In _Blakely_, the Court specifically distinguished the situation where judicial sentencing factors merely impact the minimum punishment available from that where they increase the maximum punishment above that authorized by the verdict. [ ] It is only in the latter case that a defendant's due process right to trial by jury is implicated. _See_ _Harris v. United States_, 536 U.S. 545, 567, 122 S.Ct. 2406, 153 L.Ed.2d 524[ ] (2002)[ ]. Because a guilty verdict for first-degree murder authorizes the court to impose a life sentence either with or without the possibility of release, the court may properly consider the statutory sentencing factors, without the need for jury findings regarding those factors, in deciding whether to allow the possibility of release. _See_ ... _State v. Fell_, 209 Ariz. 77, 86, ¶ 29, 97 P.3d 902, 911 (App. 2004) ("_Blakely_ does not apply to a trial court's decision whether to sentence a defendant convicted of first-degree murder to a term of natural life imprisonment or life with the possibility of parole.").

_Arizona v. Martinez_, 209 Ariz. 280, 283-84, 100 P.3d 30, 33-34 (Ct. App. 2004), _cert._ _denied_, 546 U.S. 1044, 126 S. Ct. 762 (2005).

Had the Arizona courts erred in their interpretation of _Blakely_, the United States Supreme Court could have accepted

certiorari in <u>Martinez</u> to consider the issue.[8] Because <u>Blakely</u> is not applicable to Petitioner's sentence for first-degree murder, and the United States Supreme Court has indicated that Arizona's sentencing scheme does not violate the doctrine of <u>Blakely</u>, the Arizona appellate court did not err by concluding that Petitioner was not entitled to relief based on a claim that his sentence violated the doctrine of <u>Blakely</u>. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

**8. Petitioner alleges that he was denied the effective assistance of counsel at his trial and sentencing.**

Petitioner raised several claims of ineffective assistance of counsel in his Rule 32 action. The state trial court held an evidentiary hearing for the purpose of addressing whether Petitioner's counsel had "prevented" him from testifying at his trial. The state trial court concluded that Petitioner had not been denied his federal constitutional right to the effective assistance of counsel with regard to the claims stated in Petitioner's Rule 32 action. The Arizona Court of Appeals affirmed this decision. The state court's decision denying Petitioner's ineffective assistance of counsel claims was not clearly contrary to federal law.

_____

[8] The Magistrate Judge reached a similar conclusion in a Report and Recommendation in another section 2254 matter, <u>Williams v. Perkins</u>, available at 2007 WL 433575. The Honorable Earl H. Carroll adopted the Report and Recommendation in that matter, which decision was affirmed by the Ninth Circuit Court of Appeals, <u>see</u> 399 Fed. App. 210 (Oct. 06, 2010), and the United States Supreme Court denied certiorari in the matter on March 21, 2011. <u>See</u> 131 S. Ct. 1681 (2011).

To state a claim for ineffective assistance of counsel, a habeas petitioner must show both that his attorney's performance was deficient and that the deficiency prejudiced the petitioner's defense. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). The petitioner must overcome the strong presumption that counsel's conduct was within the range of reasonable professional assistance required of attorneys in that circumstance. See id., 466 U.S. at 687, 104 S. Ct. at 2064. To establish prejudice, the petitioner must establish that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. See also, e.g., Harrington, 131 S. Ct. at 786-88. Counsel's performance will be held constitutionally deficient only if the defendant proves thier actions "fell below an objective standard of reasonableness," as measured by "prevailing professional norms." Strickland, 466 U.S. at 688, 104 S. Ct. 2052. See also Cheney, 614 F.3d at 994-95.

To establish prejudice, the petitioner must establish that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. See also, e.g., Cheney, 614 F.3d at 994. Therefore, to succeed on an assertion his counsel's performance was deficient because counsel failed to raise a particular argument, either in his trial proceedings or in his appeals, the petitioner must establish the argument was likely to be successful, thereby

establishing that he was prejudiced by his counsel's omission. See Tanner v. McDaniel, 493 F.3d 1135, 1144 (9th Cir. 2007); Weaver v. Palmateer, 455 F.3d 958, 970 (9th Cir. 2006). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693, 104 S. Ct. at 2067. Accordingly, prejudice from counsel's allegedly deficient performance is less likely when the case against the defendant is strong. See, e.g., Wong v. Belmontes, 130 S. Ct. 383, 390-91 (2009); Avila v. Galaza, 297 F.3d 911, 923-24 (9th Cir. 2002); Godwin v. Johnson, 632 F.3d 301, 311 (6th Cir. 2011). It is Petitioner's burden to establish both that his counsel's performance was deficient and that he was prejudiced thereby. See, e.g., Wong, 130 S. Ct. at 384-85 (2009).

"Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010), quoted in Harrington, 131 S. Ct. at 788. However, the Court must apply an extremely deferential standard of review with regard to Strickland claims presented by a state habeas petitioner. See Harrington, 131 S. Ct. at 785 ("A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.").

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," id., at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d

-37-

> 481 (1997), and when the two apply in tandem, review is "doubly" so, <u>Knowles</u>, 556 U.S., at ----, 129 S.Ct. at 1420. The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S. Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

<u>Id.</u> at 788.

Having thoroughly reviewed the record in this matter, the Magistrate Judge concludes that Petitioner has not established that any alleged error by trial or sentencing counsel was incompetent or prejudicial. Accordingly, the Arizona state courts' decisions that Petitioner had not been denied the effective assistance of counsel was not clearly contrary to nor an unreasonable application of federal law and Petitioner is not entitled to habeas relief on the basis of this claim.

### III Conclusion

Petitioner properly exhausted all but one of his federal habeas claims in the state courts. The Arizona courts' conclusions that Petitioner had not been denied his federal constitutional rights were not clearly contrary to nor an unreasonable application of federal law.

-38-

**IT IS THEREFORE RECOMMENDED that** Mr. Dunlap's Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length.

Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

Pursuant to 28 U.S.C. foll. § 2254, R. 11, the District Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The undersigned recommends that, should the Report and Recommendation be adopted and, should Petitioner seek a certificate of appealability, a certificate of appealability should be denied because Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C.A § 2253(c)(2).

DATED this 11th day of August, 2011.

_____
Mark E. Aspey
United States Magistrate Judge

-40-